# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| **JEFFERSON WAYNE GILL** | **CIVIL ACTION NO. 05-2124** |
| **VS.** | **SECTION P** |
| **SHERIFF SHOEMATE, ET AL.** | **JUDGE JAMES** |
| | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* on December 9, 2005 by *pro se* plaintiff Jefferson Wayne Gill. Plaintiff is an inmate in the custody of the Louisiana Department of Public Safety and Corrections. When he filed this complaint he was incarcerated at the David Wade Correctional Center, Homer, Louisiana; he was subsequently transferred to the C.Paul Phelps Correctional Center, DeQuincy, Louisiana, but his complaint concerns conditions of confinement and other incidents which occurred during his incarceration at the East Carroll Detention Center (ECDC) and the River Bend Detention Centers (RBDC).

Plaintiff names East Carroll Parish Sheriff Shoemate, ECDC's Warden, Mr. Jones, and a corrections officer named "Gerald." Plaintiff prays for "...$17,000 for suffering and loss of property damages."

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.

## STATEMENT OF THE CASE

On March 31, 2004, unnamed corrections officers at the RBDC seized plaintiff's wallet containing his Social Security Card and those of his sons, as well as birth certificates, a $50 money order receipt and his drivers license. Plaintiff claims to have filed a grievance concerning

1

the loss of his property, however, he further claims that the jail officials ignored his complaint.

On May 2, 2004, plaintiff was examined by Nurse Posey. Plaintiff complained of back pain. Plaintiff was charged $10 for the examination. The Nurse advised plaintiff that she could not treat the ailment.

On June 26, 2004, Officer "Gerald" seized plaintiff's radio while searching the dorm for illegal drugs. Despite a request, plaintiff's radio has not been returned.

On August 28, 2004, the roof of the ECDC was damaged by strong winds. Thereafter, rain water leaked into the building causing a build up of mold on the ceiling.

On October 11, 2004, unknown officials of the State of Louisiana investigated the complaint of several ECDC inmates. While these officials were interviewing inmates, "... Mr. Shoemake (the Sheriff), Mr. Jones (the Warden) and several other officers of ECDC stood at the door of the interviewing office to intimidate the inmates before they entered the room to be interviewed which coerced some inmates into signing another petition stating they did not know what they were doing."

On October 28, 2004, plaintiff was told by Officer "June" that all out-going inmate mail had to be inspected to determine whether or not it contained "information concerning how ECDC had been operating..."

Following the inspection mentioned above, renovation of the facility began and the plaintiff and his fellow inmates "were forced to stay inside without any type of protection from the dust from the insulation, mold and mildew of the sheet rock and dust and fumes from paint..." Plaintiff claimed to have suffered head aches and eye and throat irritation.

On an unspecified date plaintiff consulted the law librarian at ECDC about the conditions of confinement mentioned above. The librarian "...refused to provide any meaningful assistance

by stating he didn't know what to do."

On other unspecified dates the law librarians at ECDC and RBDC refused to provide assistance to plaintiff concerning a law suit plaintiff wanted to file against the Beauregard Parish Sheriff's Office for conditions of confinement at the Beauregard Parish Jail.

Plaintiff signed his complaint on November 16 and November 18, 2005. The pleadings were mailed on December 8, 2005. For the purposes of this Report, the undersigned will assume that November 18, 2005 is the earliest date that the pleadings could be said to have been filed.[1]

## LAW AND ANALYSIS

### 1. Frivolity Review

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be

---

[1] Petitioner has thus been given the benefit of the "mailbox rule" with regard to the filing of his writ application in this court. See *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), wherein a bright-line "mailbox rule" for *pro se* prisoners was established. The Supreme Court recognized that without a mailbox rule, prisoners acting *pro se* would be unduly prejudiced in their attempts to exercise their rights under the law: "Unskilled in law, unaided by counsel, and unable to leave the prison, [a prisoner's] control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access– the prison authorities–and the only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice." *Houston*, 487 U.S. at 271-72, 108 S.Ct. at 2382-83.

granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986). District courts must construe *in forma pauperis* complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's original complaint is somewhat ambiguous. Nevertheless, it appears that plaintiff has pled his best case and need not be afforded any further opportunity to amend.

Accepting all of plaintiff's allegations as true, the court concludes, for the reasons stated hereinafter, that he has failed to state a claim for which relief may be granted and accordingly, recommends dismissal of the complaint.

## 2. Exposure to Mildew, Mold, Dust, and Fumes

It is impossible to determine whether plaintiff was a pretrial detainee or a convicted felon

4

when he was incarcerated at ECDC or RBDC. However, this distinction is of little importance in the resolution of this complaint. If plaintiff was a pretrial detainee at the time of the alleged deprivations, his claims would arise from the due process guarantees of the Fourteenth Amendment. See *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir.1996) (*en banc*). On the other hand, if plaintiff were a convict during the operative period, his rights would have been defined by the Eighth Amendment's prohibition against cruel and unusual punishment. In any event, there is no significant legal distinction between pre-trial detainees and convicted prisoners when addressing complaints "concerning basic human needs" as such needs relate to the conditions of confinement. See *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir.2001).

Courts apply different tests when "analyzing constitutional challenges by pretrial detainees" depending upon whether the challenge is classified "as an attack on a 'condition of confinement' or as an 'episodic act or omission.'" *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir.1997) (*en banc*) (quoting *Hare*, 74 F.3d at 644) (Despite the practice of differentiating between these two tests, "the reasonable-relationship test employed in conditions of confinement cases is the functional equivalent to the deliberate indifference standard employed in episodic cases." *Scott v. Moore*, 114 F.3d 51, 54 (5th Cir.1997) (en banc ).

A challenge constitutes an attack on conditions of confinement when the detainee attacks "general conditions ... or restrictions of pretrial confinement." *Id.* (quoting *Hare*, 74 F.3d at 644). Challenges to general conditions of confinement require application of "the reasonable relationship test of *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)." *Id.* Under that test, "a constitutional violation exists only if [the court finds] that the condition of confinement is not reasonably related to a legitimate, non-punitive governmental objective." *Id.* In addition, to succeed on a deprivation-of-hygiene claim, plaintiff must show an "extreme

5

deprivation" of sanitation. See *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)(citing *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)). In other words, even if the pre-trial detainee establishes evidence of a punitive purpose, in conditions of confinement claims, there is "a *de minimis* level of imposition with which the Constitution is not concerned." *Hamilton v. Lyons*, 74 F.3d 99, 106 (5th Cir.1996).

Plaintiff complains of mold on the ceiling of CPDC. He complains that he was exposed to dust, mildew, odors, and fumes when the facility was renovated. Plaintiff does not state with certainty how long he was exposed to these conditions. Regrettable as such exposure may be, plaintiff has not established that he is entitled to monetary damages for his pain and suffering and mental anguish and stress.

42 U.S.C. § 1997e was amended by the Prison Litigation and Reform Act of 1996. Under the current version of the statute, prisoners[2] are barred from recovering monetary damages for mental or emotional injuries "unless there is a prior showing of physical injury." *Crawford-el v. Britton*, 523 U.S. 574, 596, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). The "physical injury" required by § 1997e(e) must be more than *de minimis* but need not be significant. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999) (citing *Siglar v. Hightower*, 112 F.3d 191 (5th Cir.1997). The Fifth Circuit has not yet defined the parameters of what constitutes a "physical injury" in this context. However, some guidance in this context is offered by the case of *Luong v. Hatt*, 979 F.Supp. 481 (USDC - ND Tex. 1997). In that case, the court analyzed the "physical

---

[2] According to the statute, "... the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." §1997e(h). Thus, the provisions of the statute apply whether plaintiff was a detainee or a convict.

injury" requirement in the context of excessive force or failure to protect claims. The court reasoned that the determination of whether or not an injury exceeds the *de minimis* threshold should be determined based upon how "...people in a free world setting in exercising their day-to-day medical care would treat such injuries." *Luong*, 979 F. Supp. at 486.

The court reasoned,

> Just as an example, there are numerous scrapes, scratches, cuts, abrasions, bruises, pulled muscles, back aches, leg aches, etc., which are suffered by free world people in just every day living for which they never seek professional medical care. Thus, an appropriate *de minimis* standard would be whether as a common-sense category approach to the injury; would the injury require or not require a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury? In effect, would only home treatment suffice?
>
> A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks. People in the regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care. Thus, the seriousness of the injury needed to rise about [sic] *de minimis*, would ... require more than the types and kinds of bruises and abrasions about which the Plaintiff complains. Injuries treatable at home and with over-the-counter drugs, heating pads, rest, etc., do not fall within the parameters of 1997e(e). *Id.*

Plaintiff has not alleged any physical harm resulting from his exposure to the moldy ceiling of CPDC. He merely claimed in a general and conclusory fashion that such exposure is "...hazardous to the respiratory system." He alleged that as a result of the renovations to the facility, he suffered head aches and eye and throat irritation. None of these conditions necessarily require treatment by a medical care professional. All are treatable in the home with

7

common over-the-counter medications.³ In short, plaintiff's alleged injuries are *de minimis* and therefore his claim for monetary damages occasioned by his exposure to mold, mildew, dust or fumes is legally without merit. See *Herman v. Holiday*, 238 F.3d 660, 666 (5th Cir.2001) (holding that a plaintiff was not entitled to money damages as a matter of law on his claim for mental and emotional stress due to an increased risk of illness, cold showers, cold food, unsanitary dishes, insect problems, inadequate clothing, and the presence of an open cesspool near the housing unit because he did not allege any physical injuries resulting therefrom); *Harper*, 174 F.3d at 719 (finding that a prisoner complaining about his placement in administrative segregation failed to demonstrate a physical injury as required by §1997e(e) sufficient to support a claim for monetary damages); *Alexander v. Tippah County, Mississippi*, 351 F.3d 626, 630-31 (5th Cir.2003), *cert. denied*, 541 U.S. 1012, 124 S.Ct. 2071, 158 L.Ed.2d 623 (2004) (nausea and vomiting caused by raw sewage on floor of jail cell was *de minimis*).

### 3. Medical Care Claim

Plaintiff claimed that Nurse Posey did not adequately treat his back ache on May 2, 2004.

As stated above, it is impossible to determine whether or not plaintiff was a detainee or a convict on May 2, 2004. The distinction is of little moment, however. The constitutional right of a detainee to medical care is based upon the due process guarantee of the Fourteenth Amendment. *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir.2000). That right is violated only if the defendants act with deliberate indifference to a substantial risk of serious medical harm which results in injury. *Id.* Deliberate indifference requires that the defendants have subjective

---

³ See Medline Plus, Medical Encyclopedia,
A Service of the United States National Library of Medicine and the National Institutes of Health at http://www.nlm.nih.gov/medlineplus/encyclopedia.html

knowledge of the risk of harm. *Id.* Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm. *Id.* The same test is applied under an Eighth Amendment analysis appropriate to the resolution of a convict's medical care claim. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)

Thus, plaintiff can establish an actionable constitutional violation only if he alleges facts tending to establish that the defendants were deliberately indifferent to his serious medical needs. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). Plaintiff has not made such a showing. As shown above, plaintiff cannot show that his medical needs were even serious.

In any event, deliberate indifference in the context of the failure to provide reasonable medical care to either a pretrial detainee or a convict means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Id.* at 458-59. "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999). The fact that a plaintiff disagrees with what medical care is appropriate does not state a claim of deliberate indifference to serious medical needs. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997).

Plaintiff has not alleged facts sufficient to establish deliberate indifference in this context. The facts alleged by the plaintiff establish that he was examined by a nurse for his relatively non-serious condition.

Plaintiff has not shown that any of the named defendants were aware of facts from which an inference of <u>substantial risk of serious harm</u>[4] could be drawn; that they actually drew that inference; and that their response indicated that they subjectively intended that harm occur to the plaintiff. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 458-459 (5th Cir.2001) Further, whether or not they "should have perceived" a risk of harm to plaintiff, but did not, is of no moment since "...the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

In short, plaintiff's medical care claim is also frivolous.

## 4. Lost Property Claims

Plaintiff claimed that on one occasion the defendants seized and then retained his wallet and its contents and, on another, his radio. Section 1983 proscribes conduct by any person who, under the color of state law, acts to deprive another person of any right privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. §1983. Thus, an initial inquiry in a lawsuit filed under §1983 is whether plaintiff has alleged that his constitutional

---

[4] Plaintiff's "back ache" appears to have been a "*de minimis*" injury or condition, see *Luong*, *supra*, 979 F. Supp. at 486, and thus clearly raised no substantial risk of serious harm.

rights have been violated. If no constitutional violation has been alleged, there is no cognizable claim under §1983.

The Due Process Clause of the Fourteenth Amendment provides "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Constitution, Amendment XIV. However, the jurisprudence makes it abundantly clear that a prisoner's claim for random deprivation of personal property is not cognizable under §1983.

In *Parratt v. Taylor*, 451 U.S. 527, 544, 107 S.Ct. 1908, 68 L.Ed.2d 420 (1981), a prisoner claimed that prison officials had negligently deprived him of his personal property without due process of law. The Supreme Court held that the prisoner was "deprived" of his property within the meaning of the Due Process Clause of the Fourteenth Amendment, but the Court ruled that the State's post-deprivation tort remedy provided all the process that was due. *Id.,* 451 U.S. at 536-37, 101 S.Ct. at 1913.

The Due Process Clause does not embrace tort law concepts. *Id.* Although a prisoner may be afforded a remedy under state tort law for deprivation of property, the Fourteenth Amendment does not afford the prisoner a remedy. *Daniels,* 474 U.S. at 335, 106 S.Ct. at 667. Even in instances where intentional deprivation occurs, as is the case herein, where an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated. *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Davis v. Bayless*, 70 F.3d 367 (5th Cir. 1995); *Murphy v. Collins*, 26 F.3d 541 (5th Cir. 1994). This principle (known as the *Parratt/Hudson* doctrine) rests on the premise that because the state is unable to predict random and unauthorized conduct, pre-deprivation remedies are unfeasible. *Davis*, 70 F.3d at 375, citing, *Zinermon v. Burch*, 494 U.S. 113, 128-32, 110 S.Ct. 975, 985-86, 1098 L.Ed.2d 100 (1990) (distinguishing between random unauthorized conduct and a deprivation which results from

predictable conduct authorized by a State).

In this case, plaintiff's allegations, accepted as true for purposes of this evaluation, demonstrate that an intentional, random, and unauthorized deprivation occurred when his wallet and its contents and later his radio were seized and then retained by prison officials. If adequate state law remedies are available, no further due process is required under the Constitution.

Louisiana law provides plaintiff the opportunity to seek redress for either the negligence of prison officials or an intentional tort committed by employees of the prison facility. See, La. Civil Code, Article 2315. This provision of state law which is the general tort provision of Louisiana's Civil Code provides all the process that is required, and thus, the Fourteenth Amendment is not implicated. *Charbonnet v. Lee*, 951 F.2d 638 (5th Cir.), *cert. denied*, 505 U.S. 1205, 112 S.Ct. 2994, 120 L.Ed.2d 871 (1992).

A liberal construction of plaintiff's complaint fails to support a constitutional violation; plaintiff's claim is clearly barred by the *Parratt/Hudson* doctrine. Unless plaintiff can show that the defendants violated his constitutional rights, plaintiff's claim is not a cognizable claim under §1983. Therefore, the court concludes that plaintiff's lost property claims are frivolous. See 28 U.S.C. §1915(e)(2)(B)(i) and (ii).

### 5. Access to Courts

Plaintiff argues generally that the defendants interfered with or denied him access to courts. In particular, he claimed that the librarian at the ECDC Law Library was unable to assist him in preparing a complaint concerning conditions of confinement. He also claimed that the librarians at both ECDC and RBDC provided no assistance to him with regard to a suit he proposed to file against the Beauregard Parish Sheriff's Office.

"It has long been recognized that prisoners generally enjoy the constitutional right of

access to the court." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999). See *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions or conditions of confinement." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). Plaintiff's allegations merely indicate that the law librarians were unable to assist him in the preparation of his proposed suits. He has not alleged that he was otherwise denied the opportunity to file the proposed complaints. Moreover, the records of this court reflect that plaintiff has not been denied access to this or any court. In addition to the instant suit, plaintiff was able to file and litigate two other civil rights suits. See *Gill v. Cryar,* No. 2:05-cv-00270-JTT which was filed on February 10, 2005 and dismissed on January 21, 2006; and *Gill v Griffin et al.*, No. 2:05-cv-01791-JTT, which was filed on October 6, 2005 and dismissed on January 25, 2006.

Finally, to prevail on an access-to-the-court claim, a prisoner must demonstrate that he has suffered "an actual injury" stemming from the alleged defendants' unconstitutional conduct. *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir.1999); *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir.1998). Plaintiff clearly has not shown that he was prohibited from filing any non-frivolous claims concerning conditions of confinement at the various institutions he has resided in. His inability to demonstrate any prejudice is fatal to this access to court claim.

### 6. Mail

Plaintiff claims only that a corrections officer told him that out-going mail was inspected. He does not allege that any of his mail was actually inspected.

There are two rights implicated by "mail tampering" complaints by prisoners. Such

claims may implicate either the right of access to the courts or the right to free speech.

To rise to the level of a constitutional violation of an inmate's right of access to the courts, the inmate must allege that his position as a litigant was prejudiced by the mail tampering. See *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir.), *cert. denied*, 504 U.S. 988, 112 S.Ct. 2974, 119 L.Ed.2d 593 (1992). Here, plaintiff has only asserted that jail authorities read all out-going mail. He has thus failed to state a cognizable constitutional . See *Brewer v. Wilkinson*, 3 F.3d 816 (5th Cir.1993), *Walker v. Navarro County Jail*, 4 F.3d 410 (5th Cir.1993).

Furthermore, plaintiff has failed to establish a constitutional violation based upon the denial of his right to freedom of speech. See, *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir.1993); *Walker v. Navarro County*, 4 F.3d 410, 413 (5th Cir.1993). A prisoner's right to free speech has been defined by the court as the right to be free from <u>unjustified</u> governmental interference with communication; this right is not absolute with respect to mail. See, *Brewer*, at 821. Instead, a prisoner's First Amendment right is equated wit the right to be free from censorship; however, "[f]reedom from censorship is not the equivalent of freedom from inspection or perusal." *Id.* at 821 (citing *Wolf v. McDonnell*, 418 U.S. 539, 576, 94 S.Ct. 2963, 2984, 41 L.Ed.2d 935 (1974)). Thus, if the mail is not censored and the interference with mail is reasonably related to a penological interest, the Constitution is not violated. *Id.* at 822-25 (citing *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987), and *Thornburge v. Abbott*, 490 U.S. 401, 419, 109 S.Ct. 1874, 1884, 104 L.Ed.2d 459 (1989)). Plaintiff's allegations in regard to interference with his mail simply do not establish a violation of his First Amendment rights.

Plaintiff's mail tampering complaint is frivolous.

### 7. Intimidation by Prison Officials

Plaintiff claims that the ECDC inmates successfully petitioned Louisiana officials concerning the conditions of their confinement. He claims that these officials actually interviewed inmates at ECDC. However, he claims that the presence of the Sheriff and others at the investigation intimidated some of the inmates. This is clearly a conclusory allegation without any factual support. To the contrary, it appears that the prisoners' grievances were heeded since renovation of the facility commenced at some point in time following the interviews.

8. Limitations

The district court is authorized to dismiss a claim as frivolous "it is clear from the face of a complaint filed *in forma pauperis* that the claims asserted are barred by the applicable statute of limitations." *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994); *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993). A district court may raise the limitation period *sua sponte*. See *Harris v. Hegmann,* 198 F.3d 153 (5th Cir. 1999).

The Supreme Court has held that the statute of limitations for a §1983 action is the same as the statute of limitations in a personal injury action in the state in which the claim accrues. *Wilson v. Garcia*, 471 U.S. 261, 279-280, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1984).

However, the date of accrual for a §1983 claim is a question of federal law. *Piotrowski v. City of Houston*, 51 F.3d 512 (5th Cir. 1995); *Longoria v. City of Bay City*, 779 F.2d 1136 (5th Cir. 1986). "Under federal law, the limitations period commences when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." *Piotrowski*, 51 F.3d at 516, quoting *Vigman v. Community National Bank and Trust Co.*, 635 F.2d 455, 459 (5th Cir. 1981). A plaintiff need not realize that a legal cause of action exists but only that the facts support a claim. See,

15

*Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983).

The Fifth Circuit has approved application of Louisiana's one-year personal injury statute of limitations provided by La. Civ.Code Ann. art 3492 in a §1983 action. *Lavellee v. Listi*, 611 F.2d 1129 (5th Cir. 1980).

Plaintiff's loss of property claims accrued on March 31, 2004, and June 26, 2004; his medical care claim involving Nurse Posey accrued on May 2, 2004; his conditions of confinement claims accrued between August - October, 2004; his claim of intimidation accrued on October 11, 2004; and, his mail tampering claim accrued on October 28, 2004. Plaintiff thus had one-year from those various dates to file suit on those specific complaints. Plaintiff's complaint was signed on November 18, 2005, and, in accordance with the "mailbox rule," (see footnote 1) that date is the earliest date upon which suit can be said to have been filed. That being so, plaintiff's filing herein is clearly untimely and his complaint is, in addition to being frivolous for the reasons stated above, subject to dismissal as time-barred.

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days**

**following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

      **THUS DONE AND SIGNED** in Chambers at Monroe, Louisiana, this 9th day of March, 2006.

                              KAREN L. HAYES
                              U. S. MAGISTRATE JUDGE